**MINUTE ENTRY**
**KNOWLES, M.J.**
**NOVEMBER 20, 2013**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**STEPHEN DANIEL BOUDREAUX**                                **CIVIL ACTION**

**VERSUS**                                                  **NO. 12-2598**

**BRANDON COOPER, ET AL.**                                  **DIVISION "3"**

On this date, Defendants' Motion for Summary Judgment Pursuant to Rule 56(b) of Federal Rules of Civil Procedure [Doc. #37] came on for oral hearing before the undersigned. Present were Jennifer Freychineaud on behalf of plaintiff and Rachel Catalanotto on behalf of defendants. Having reviewed the motion, the opposition and the case law, the Court rules as follows.

**I.      Background**

The complaint arises out of the arrest and confinement of plaintiff Stephen Boudreaux at the St. Tammany Parish Jail. Boudreaux was arrested on October 19, 2011 by the St. Tammany Parish Sheriff's Office and transported to the St. Tammany Parish Jail the same day. Plaintiff alleges that Dr. Demaree Inglese, a physician at the jail, denied him medication, that he was held for three days in a 3x3-foot cell before being placed in a larger holding cell on October 24, 2011, where he was then attacked by another inmate, Brandon Cooper.

MJSTAR(00:05)

Plaintiff alleges that after October 25, 2011, he was denied medical care. Plaintiff also alleges that the confinement in the 3x3-foot cell violated his constitutional rights. Plaintiff further alleges various state law claims involving the medical care provided to him after October 25, 2011 and the failure to provide him with a safe environment. Boudreaux sued defendants on October 25, 2012 under 42 U.S.C. § 1983 and state law.

In his complaint, plaintiff raised three claims: (1) a civil-rights claim of cruel and unusual punishment arising from defendants' alleged disregard for his safety by placing him in a holding cell while he was on suicide watch under 42 U.S.C. § 1983; (2) a pendent state-law claim of vicarious battery against Warden Longino; and (3) a pendent state-law claim of negligence.

On May 6, 2013, this Court granted in part the motion for judgment on the pleadings filed by Sheriff Jack Strain, Major Gregory Longino and Dr. R. Demaree Inglese (collectively, "defendants"). The Court dismissed the majority of plaintiff's claims except for his (1) Section 1983 civil-rights claim based on deliberate indifference to his medical care and (2) his pendent state-law negligence claim. Defendants now move for summary judgment on the two remaining claims.

## II.     The Parties' Positions

### A.     Defendants' Motion for Summary Judgment Pursuant to Rule 56(b) of Federal Rules of Civil Procedure

Defendants first argue that plaintiff fails to allege sufficient specific facts. Defendants note that plaintiff alleges that he "was not able to take the medications that were prescribed to him and Jail personnel did not administer the proper medications for the duration of the time that Petitioner was held there . . . ." Defendants contend that he fails to identify the medications in question, the prescriber thereof, the purpose of the medication, the names of the officials involved, or the specific harm that he suffered. Defendants argue that he fails to allege any sort of physical injury as a result

2

of any alleged inadequate medical treatment. Citing the Prison Litigation Reform Act, they argue that he can not bring suit unless he suffered a physical injury.

Defendants also argue that they are entitled to qualified immunity. They contend that plaintiff offers only bald allegations to support the existence of a constitutional violation and the unreasonableness of defendants' actions. With regard to Dr. Inglese, defendants maintain not only that he was not deliberately indifferent to plaintiff's medical treatment, but plaintiff received a high level of medical attention. And, they maintain, plaintiff has failed to allege sufficient facts to demonstrate a serious medical injury. Defendants argue that the evidence that they have submitted demonstrates that the entire medical staff responded to plaintiff's medical needs in a conscientious and professional manner and made every effort to address his medical needs.

Citing case law, defendants maintain that it is well-established law that supervisors such as Strain and Longino can not be held liable under Section 1983 based on a theory of *respondeat superior*. They argue that neither Strain nor Longino had any personal involvement with plaintiff. Neither has plaintiff demonstrated that a policy or procedure existed so as to render them liable in their official capacities.

Lastly, defendants contend that plaintiff's state-law claim should be dismissed for any of the above reasons. In the alternative, they ask the Court not to exercise supplemental jurisdiction over such a claim should it dismiss plaintiff's federal claim.

### B.    Boudreaux's Opposition

Plaintiff contends that the medical records demonstrate that he not only requested but begged jail personnel for proper medical care. He argues that he ultimately suffered an exacerbation of the physical injuries that he sustained while incarcerated as well as an exacerbation of his pre-existing

mental diagnoses. He alleges that his complaint gives a summary of events that led to his diagnosis for depressive disorder, disability due to neck and back injuries sustained during the course and scope of employment and migraines and that he made jail personnel aware of said injuries during incarceration. He contends that the health assessments from the jail identify the medications of Zoloft, Klonopin, Adderal, Ambien, Emitrex, Ativan, Neurontin and Percocet that had been prescribed to him. One assessment also indicates that he suffered from migraines that induced seizures and that he suffered from a ruptured L-5 disc.

Plaintiff maintains that jail personnel did not transport him to Louisiana State University Hospital until the day after the incident with Cooper. He alleges that he suffered a fractured maxillary sinus, fractured orbital bone, headache, facial trauma, swelling of his face and a corneal abrasion that created blurred vision, numbness in his face, dizziness and drooping of the right side of his face. He maintains that his injuries did not begin and end on the date of the incident, but that he continued to suffer injuries that jail personnel refused to acknowledge.

He notes that jail personnel diagnosed him with a form of Somatoform Disorder, which is characterized by unexplained physical complaints, lasting at least six months and that are below the threshold for a diagnosis of Somatization Disorder. Plaintiff maintains that such a diagnosis was error given that his injuries related to the physical attack by Cooper.

Plaintiff argues that jail personnel refused to acknowledge the medical records of Dr. James B. Denney, which reflect that he had spent ten days in Greenbriar Hospital only a month before his arrest. Denney's records also demonstrated that plaintiff suffered from Depressive Disorder, Generalized Anxiety Disorder, Pain Disorder Associated with both Psychological Factors and a General Medical Condition, and Attention-Deficit Hyperactivity Disorder - Predominantly

Inattentive Type. He contends that the diagnosis of Somatoform Disorder is in direct contravention to Denney's records.

Plaintiff also alleges that Strain and Longino became aware of his claims during the Administrative Remedy Procedure ("ARP") process and that they failed to address his claims after he filed his ARPs. They are, he thus argues, not entitled to qualified immunity. He maintains that because they knew of his ARPs, Strain and Longino had direct knowledge of and personal involvement in the deliberate indifference to his medical care.

### C. Defendants' Reply

Defendants maintain that this lawsuit is about nothing more than plaintiff's disagreement with certain aspects of the health care provided him while incarcerated. They maintain that plaintiff points to no evidence to support his claims. Citing the reference to Denney, defendants note that the only evidence that Denney's and the jail personnel's diagnoses were different is the argument of counsel.

Defendants contend that simply because Strain and Longino were aware of his ARP does not render them participants in his medical care. If that were the case, they argue, supervisory personnel would be liable in every lawsuit in which they had rejected an ARP.

## III. Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the

nonmoving party is insufficient to enable a reasonable jury to return a verdict in [his] favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### B. Application of Law to Fact

"One is not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation. Plaintiffs must plead sufficient facts to state a cognizable legal claim." *Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . and the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully)). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.' . . . [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 677-78 (citations, quotation marks, and brackets omitted).

In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Marquez v. Quarterman*, 652 F. Supp. 2d 785, 790 (E.D. Tex. 2009) (citing *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Neither Strain nor Longino participated in the alleged acts of misconduct here. Plaintiff sued them because of their supervisory roles, but it is well-established law that the doctrine of *respondeat superior* does not apply in Section 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under Section 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may only be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir.1987). The Court finds that neither condition is satisfied under the factual circumstances of this case. The claims against Strain and Longino fail to state a claim upon which relief may be granted.

In both his complaint and his opposition to the motion, the only allegation of personal involvement of Strain and Longino is that they "were made personally aware of Petitioner's complaints as a result of the Administrative Remedy Procedure and had the opportunity to address those complaints but ultimately determined that Petitioner's complaints were unfounded." (Doc. # 1 at ¶ 19). As the Fifth Circuit noted in *Johnson v. Johnson*, however, this allegation is not enough:

7

> In addition to discharging their usual duties of overseeing and reviewing those prison operations for which they were responsible, these supervisory officials had notice of Johnson's plight through various letters and life-endangerment forms. Like all prison officials, these supervisory defendants have a duty to take reasonable measures to protect inmates. *See Farmer*, 511 U.S. at 832, 114 S.Ct. 1970. Yet given the size of the operation that they oversee, they cannot be expected to intervene personally in response to every inmate letter they receive. The record in this case shows that they responded to Johnson's complaints by referring the matter for further investigation or taking similar administrative steps. This was a reasonable discharge of their duty to protect the inmates in their care. Given that neither the Supreme Court nor this court has delineated the contours of what supervisory officials must do on pain of personal liability, their conduct did not violate clearly established law of which reasonable officers should have known. Therefore, they are entitled to qualified immunity.

385 F.3d 503, 526 (5th Cir. 2004). Strain and Longino referred Boudreaux's grievances for investigation, and Inglese responded to the complaints – on more than one occasion – rebutting plaintiff's grievances. That is all that is required of Strain and Longino under *Johnson*.

And merely because Strain and Longino ultimately concluded that Boudreaux's complaints were without merit does not render them liable under Section 1983. It is well-established law that inmates do not state a cause of action because they are dissatisfied with the nature of the grievance procedure, *i.e.*, there is no claim against Strain and Longino because they ultimately denied Boudreaux's ARP. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) ("Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.").

Turning now to the applicable law with regard to Inglese, the Court initially notes what the Constitution does not require with respect to the medical care of inmates.

First, the Constitution does not require that inmates receive optimal care. That an inmate's medical treatment "may not have been the best money could buy" is simply insufficient to establish a federal violation. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see also Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006) ("deliberate indifference exists wholly independent of an

optimal standard of care"); *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available).

Second, the Constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. *Hall v. Thomas*, 190 F.3d 693, 697-98 (5th Cir. 1999); *see also Kelly v. Gusman*, Civ. A. No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); *Cerna v. Tex. Tech Med. Staff*, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Cerna*, 2004 WL 42602, at *2.

On the contrary, an inmate's Constitutional right to medical care is extremely limited. Specifically, the United States Constitution requires only that an inmate's serious medical needs[1] not be met with deliberate indifference. *See, e.g., Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir.1999). On that point, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

*Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks,

---

[1] Because it is clear that Boudreaux cannot show deliberate indifference in this case, the Court need not determine whether his allegations of depressive disorder, disability due to neck and back injuries sustained during the course and scope of employment and migraines actually constitute a serious medical need.

9

brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

The medical records in the instant case show that Boudreaux was not refused treatment, his various medical complaints were not ignored, and he was not intentionally treated incorrectly. Those records instead reflect that he was repeatedly seen by the jail's medical staff and treated with medications. Accordingly, the records disprove his allegation that his medical needs were met with deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Indeed, the medical records reflect that no other inmate received such specialized medical attention as Boudreaux. The records reflect that jail healthcare personnel saw Boudreaux a total of 36 different times since his arrival, which constituted an average of one visit every 2.3 days. [Ex. A. at p. 51]. After the incident with Cooper, they transported Boudreaux to the Louisiana State University Hospital where it was determined that any fracture from the incident with Cooper was stable, and he could thus be discharged to the jail. [Ex. A at p. 41]. As a precaution, Inglese referred Boudreaux to an Opthalmology Clinic at LSU where it was determined that there was "[n]o ocular pathology," and he could thus be discharged to the jail with no followup. [*Id.*]. This record reflects far from deliberate indifference.

The Court further notes that it appears that the crux of Boudreaux's discontent is that he disagreed with Inglese's decision not to prescribe particular medications and with Inglese's diagnosis of a Somatoform Disorder. He maintains that this is in direct contravention of Denney's diagnoses. However, a mere disagreement between an inmate and the medical staff concerning whether certain

medical treatment is appropriate is not actionable under Section 1983. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Williams v. Chief of Med. Operations, Tarrant County Jail*, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994) (holding that a refusal to provide an inmate with the specific pain killers he requests does not rise to the level of a constitutional violation). Further, that a prison doctor discontinued a course of treatment allegedly previously prescribed by other physicians is of no Constitutional moment. Differences of opinion among physicians as to the appropriate method of treatment do not constitute deliberate indifference. *Campbell v. Martinez*, No. Civ. A. 4:03-CV-299-Y, 2003 WL 22410576, at *3 (N.D.Tex. May 14, 2003), *aff'd*, 96 Fed. App'x 237 (5th Cir. 2004).[2] Moreover, even if the alternative medication prescribed by Inglese was ineffective as plaintiff contends, he still has no constitutional claim. Federal constitutional protections are not violated simply because an inmate's medical treatment was unsuccessful or because pain persisted despite treatment. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Williams*, 1994 WL 733493, at *2; *Kron v. Tanner*, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), *adopted*, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). As the United States Fifth Circuit Court of Appeals has, for example, noted: "Continuing back pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred." *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

In summary, Boudreaux essentially invites this Court to overrule Inglese's (and several other physicians') medical judgment. However, a physician's "medical judgments are not to be lightly

---

[2] "Medical decisions that may be characterized as classic examples of matters for medical judgment, such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview. Such matters are questions of tort, not constitutional law." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (internal quotation marks, brackets, and citation omitted).

11

second-guessed in a federal civil rights action." *Castro v. Louisiana*, Civ. A. No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008); *see also Westlake v.. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Accordingly, based on the evidence of record showing that Boudreaux received extensive and continued medical care, the Court declines that invitation. The Court will thus grant summary judgment to Strain, Longino and Inglese on plaintiff's federal claim.

And finally, and as summary judgment has now been granted on Boudreaux's claim under federal law, the only remaining claim is his state-law claim. Accordingly, the Court must consider whether to continue to exercise supplemental jurisdiction over plaintiff's state-law claim. *See* 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to the statutory factors, the Court must also balance the factors of judicial economy, convenience, fairness, and comity. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446 (5th Cir. 2002). The Court has "wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Still, the "general rule" is to decline to exercise jurisdiction over pendent state-law claims when all federal claims have been eliminated before trial. *Amedisys*, 298 F.3d at

446-47.

This Court has granted summary judgment on the last of Boudreaux's remaining claims under federal law. There is no original jurisdiction over Boudreaux's state-law claim. There are no compelling reasons to retain jurisdiction here. Judicial economy, convenience, fairness and comity weigh in favor of declining jurisdiction to allow a state court to resolve any state-law issue here.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment Pursuant to Rule 56(b) of Federal Rules of Civil Procedure [Doc. #38] is GRANTED on the federal claim, and said claim is DISMISSED WITH PREJUDICE.

**IT IS FURTHER ORDERED** that Boudreaux's state-law claim is DISMISSED WITHOUT PREJUDICE.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**